| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |

------------------------------------------------------------x
In re:                                                                         :
                                                                                    :      Case No. 16-13164 (JLG)
Level 8 Apparel LLC, *et al.*,                                       :
                                                                                    :      Chapter 7
                                                        Debtors.   :
------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER RESOLVING OBJECTIONS TO FEE APPLICATIONS AND CHAPTER 7 TRUSTEE'S MOTIONS FOR RELIEF

**A P P E A R A N C E S:**

RUTA SOULIOS & STRATIS LLP
*Former Attorneys for the Debtors*
211 East 43rd Street, 24th Floor
New York, New York 10017
By:     Steven A. Soulios, Esq.

KLG LUZ & GREENBERG PLLC
*Attorneys for Ruta Soulios & Stratis LLP*
211 East 43rd Street, Suite 1403
New York, New York 10017
By:     Thomas J. Luz, Esq.

THE LAW FIRM OF TESE & MILNER
*Attorneys for the Chapter 7 Trustee*
735 Wickham Avenue P.O. Box 35
Mattituck, New York 11952
By:     Angela Tese-Milner, Esq.

BORG LAW LLP
*Attorneys for Weihai Textile Group Import & Export Co., Ltd.*
370 Lexington Avenue, Suite 800
New York, New York 10017
By:     Jonathan M. Borg, Esq.

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
201 Varick Street, Room 1006
New York, New York 10014
By:     Greg M. Zipes, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

Ruta Soulios & Stratis LLP's ("RSS") served as bankruptcy counsel to Level 8 Apparel LLC ("Level 8") and World Cross Cultures, Inc., an affiliate of Level 8 ("WCC," and with Level 8, the "Debtors"), in their Chapter 11 Cases.[2] The Debtors paid RSS a Retainer in connection with its retention. Approximately eighteen months after the Petition Date, the Court granted the motion of the Office of the United States Trustee (the "UST") to convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. The Trustee took possession and control of the Debtors, their estate and assets, and RSS ceased representing the Debtors.

Thereafter, RSS filed its Final Fee Application pursuant to which it sought (i) interim allowance of fees and expenses totaling $34,272.00 and $27.83, respectively, on account of services rendered during the Second Interim Fee Period, and the release of the Holdback under the First Interim Fee Order, and (ii) final allowance of fees and expenses totaling $91,175.00, and $3,722.48, respectively, for services rendered during the Fee Period.

Weihai Textile Group Import & Export Co., Ltd. ("Weihai"), a creditor, filed an objection to the fee application. The UST filed a limited objection to the fee application, and a reservation of rights. The Trustee filed a Motion to Compel Turnover, in which she objected to the fee application and sought to compel RSS to turn over the Retainer Balance. She also filed a Motion for Disgorgement, in which she sought to disqualify RSS as Debtor's counsel, deny RSS additional

---

[1] Capitalized terms in this section that are not defined shall have the meanings ascribed to them herein.

[2] WCC is a non-operating entity to whom RSS provided minimal services. The Level 8 and WCC cases are being jointly administered under Case No. 16-13164. References to "ECF No. __" are to documents filed on the electronic docket of these jointly administered cases. References to "ECF No. __ (WCC)," are to documents filed on the electronic docket of *In re World Class Cultures, Inc.,* 16-13166.

2

compensation and direct RSS to disgorge the fees and expenses paid under the First Interim Fee Order. RSS challenged the objections to its fee application, and the Trustee's additional claims for relief.

In the Fee Order, the Court determined that the Retainer is property of the chapter 7 estate. The Court found that RSS violated the disclosure requirements under Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure ("Rule 2014" and "Rule 2016," respectively), because, in the Retention Application, it failed to disclose its representation of Sam Kim, the Debtors' president, in the pre-petition Weihai Litigation (Rule 2014), and failed to disclose that On Five, an insider, is the source of the Retainer paid to RSS (Rule 2016). The Court denied Trustee's request to disqualify RSS as Debtors' counsel, but deferred its consideration of the Trustee's requests for monetary sanctions and the turnover of the Retainer, and the merits of the Final Fee Application, pending the winding-up and completion of the administration of the estate. These issues are ripe for resolution, and the Court considers them below.

## BACKGROUND[3]

### Debtors Commence The Chapter 11 Cases

On November 14, 2016 (the "Petition Date"), Level 8 and WCC commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.[4] The Debtors remained in possession and control of their business and assets as debtors in possession. The Debtors commenced the Chapter 11 Cases in the wake of the entry of a judgment against them severally in the sum of $1,892,777.96, in an action brought by Weihai against them and Scott Kim a/k/a Seung

---

[3] The background to the bankruptcy cases, and RSS's retention by the Debtors are discussed at length in the Fee Order. The Court assumes familiarity with the order, and discusses only the facts relevant to the matters at issue herein.

[4] *See Level 8 Voluntary Petition for Non-Individuals Filing for Bankruptcy*, ECF No. 1; *WCC Voluntary Petition for Non-Individuals Filing for Bankruptcy*, Case No. 16-13166, ECF No. 1 (WCC).

3

Bong Kim a/k/a Sam Kim ("Sam Kim") in the United States District Court for the Southern District of New York (the "Weihai Litigation"). RSS represented the Debtors and Sam Kim in that litigation. Fee Order at 4.

At all relevant times, Sam Kim served as a Director of Level 8, and Sam Kim's wife, Kuk Ja Kim, owned 100% of Level 8's membership interests. *Id.* at 5. Level 8's Statement of Financial Affairs discloses that during the 90-day period immediately preceding the Petition Date, Level 8 made payments to Sam Kim and his wife totaling approximately $234,000 on account of pre-petition unsecured indebtedness. *Id.* The Debtors' General Ledger shows transfers by Level 8 to Kim and his wife totaling approximately $350,000. *Id.*

**Debtors Retain RSS As Bankruptcy Counsel**

On January 5, 2017, the Debtors filed an application to employ RSS as bankruptcy counsel *nunc pro tunc* to the Petition Date (the "Retention Application").[5] On February 3, 2017, the Court entered an order approving the Retention Application and authorizing the Debtors to retain RSS as their bankruptcy counsel.[6] The Retention Application disclosed that RSS was paid a $70,000 retainer (the "Retainer"), and that On Five Corporation ("On Five") funded the Retainer. It did not disclose that On Five is an insider of Level 8, or that eight months prior to the Petition Date, On Five received transfers from the Debtors for no consideration aggregating approximately $580,000 (the "On Five Transfers"). The application did not disclose that RSS represented Sam Kim in the Weihai Litigation.

---

[5] *Debtors' Application for an Order Pursuant to 11 U.S.C. §§ 327(a) and 329, Fed. R. Bankr. P. 2014 and 2016, and S.D.N.Y. LBR 2014-1 and 2016-1 Authorizing Employment and Retention of Ruta Soulios & Stratis LLP as Bankruptcy Counsel Nunc Pro Tunc to the Petition Date*, Case No. 16-13166, ECF No. 26.

[6] *Order Granting Application to Employ Ruta Soulios & Stratis LLP as Debtors' Attorney* (the "Retention Order"), ECF No. 35.

4

**RSS First Interim Fee Application**

On April 20, 2017, RSS filed its First Interim Fee Application[7] for interim allowance of compensation for professional services rendered, and reimbursement for actual and necessary expenses incurred in connection with such services, for the period of November 4, 2016, through April 15, 2017 (the "First Interim Fee Period"). The application sought payment of $60,597.65, comprised of fees for services rendered to the Debtors during that period in the sum of $56,903.00 and associated out-of-pocket expenses totaling $3,694.65. The application was unopposed. The Court approved the First Interim Fee Application, and entered an order awarding RSS $56,903.00 in fees and $3,694.65 in expenses for the First Interim Fee Period.[8] The Court awarded the fees subject to a 10% holdback in the amount of $5,690.30 (the "Holdback"). The Court authorized RSS to credit the Retainer for the fees and expenses awarded in the First Interim Period (less the Holdback). The balance of the Retainer totals $15,093.35 (the "Retainer Balance").

**RSS Second Interim Fee Application**

On July 27, 2018, RSS filed its Second Interim Fee Application.[9] It sought (i) interim allowance of $29,102 for professional services rendered and reimbursement of $27.83 for actual and necessary expenses incurred in connection with such services, for the period of April 16, 2017, through July 27, 2018 (the "Second Interim Fee Period"), and (ii) and payment of the Holdback

---

[7] *See Application of Ruta Soulios & Stratis LLP for a First Interim Award of Compensation for Services Rendered and Reimbursement of Expenses as Counsel for the Debtors* (the "First Interim Fee Application"), ECF No. 48.

[8] *Order Granting Application for Allowance of Interim Compensation and Reimbursement of Expenses* (the "First Interim Fee Order"), ECF No. 65.

[9] *Application of Ruta Soulios & Stratis LLP For A Second Interim Award of Compensation for Services Rendered and Reimbursement of Expenses as Counsel for the Debtors* (the "Second Interim Fee Application"), ECF No. 113.

5

($5,690.30). Weihai filed an objection to the fee application.[10] The UST filed a limited objection to the fee application.[11] RSS responded to the objections.[12]

**Debtors' Cases Are Converted To Cases**
**Under Chapter 7 And Trustee Is Appointed**

While the Second Interim Fee Application was pending, by orders dated August 22, 2018 (the "Conversion Orders"),[13] the Court granted the UST's motion pursuant to section 1112(b)(4) of the Bankruptcy Code to convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.[14] On August 22, 2018, Angela Tese-Milner, Esq., was appointed as the chapter 7 trustee for the Debtors' estate (the "Trustee").[15] The Trustee took possession and control of the Debtors, their estate and assets, and RSS ceased representing the Debtors. The Trustee continues to act in that capacity.

**RSS Final Fee Application**

After entry of the Conversion Orders, RSS sought to supplement its Second Interim Fee Application to include a request for compensation for services rendered during the period of July 27, 2018, through August 22, 2018 (the "Supplemental Fee Period"). At the Court's direction, RSS supplemented the Second Interim Fee Application (i) to include a request for compensation for

---

[10] *See Objection by Weihai Textile Group Import & Export Co., Ltd. to the Application of Ruta Soulios & Stratis LLP for Award of Compensation for Services Rendered and Reimbursement of Expenses*, ECF No. 119.

[11] *Limited Objection of the United States Trustee to the Second Interim Application for Approval and Payment of Compensation and Expenses to Ruta Soulios & Stratis LLP*, ECF No. 121; *see also Reservation of Rights of the United States Trustee in Connection with the Application for Approval and Payment of Compensation and Expenses to Ruta Soulios & Stratis LLP*, ECF No. 188.

[12] *Response to Objections to Application of Ruta Soulios & Stratis LLP for a Second Interim Award of Compensation for Services Rendered and Reimbursement of Expenses as Counsel for the Debtors*, ECF No. 124.

[13] *Order Converting [Level 8] Chapter 11 Case to Chapter 7*, ECF No. 125; *Order Converting [WCC] Chapter 11 Case to Chapter 7*, ECF No. 21 (WCC).

[14] *See Motion to Convert Chapter 11 Cases to Chapter 7, or in the Alternative, Motion to Dismiss Cases*, ECF No. 116.

[15] *Notice of Appointment of Trustee Angela Tese-Milner*, ECF No. 127.

6

services rendered during the Supplemental Fee Period, and (ii) to "convert" the Second Interim Fee Application to a Final Fee Application.[16] In that application, RSS sought:

> (i) Interim allowance of compensation for professional services rendered, and reimbursement for actual and necessary expenses incurred in connection with such services for the Second Interim Fee Period totaling $39,990.83 and comprised of fees for services rendered to the Debtors during the Second Interim Fee Period in the amount of $34,272.00 (consisting of fees of $29,102.00 incurred during the Second Interim Fee Period, and fees of $5,170.00 incurred during the Supplemental Fee Period), out of pocket expenses incurred in connection with those services in the amount of $27.83, and payment of the Holdback, in the amount of $5,691.00.
>
> (ii) Final allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred from November 4, 2016, through August 22, 2018 (the "Fee Period"), totaling $94,897.48 and comprised of fees for services rendered to the Debtors during the Fee Period in the amount of $91,175.00 and expenses incurred in connection with the rendition of such services in the amount of $3,722.

**Objections To RSS Final Fee Application**

The Trustee joined Weihai's and the UST's objections to the fee application. In addition, she filed her Motion to Compel Turnover[17] seeking to compel RSS to turn over the Retainer Balance to the estate, contending that the Retainer is property of the estate. Without limitation, the Trustee complained that in pursuing the Retention Application, RSS violated sections 327 and 329 of the Bankruptcy Code and Rule 2014, because, among other things, it failed to disclose both that it represented Sam Kim in the Weihai Litigation, and that On Five funded the Retainer and is an insider of the Debtor. Fee Order at 5, 22. She complained that during its tenure as Debtors' counsel,

---

[16] *Supplemental Filing of Ruta Soulios & Stratis LLP Seeking (I) to Convert Second Interim Fee Application to a Final Fee Application and (II) Supplement Amount of Fees Sought to Include Time Expended After the Filing of the Second Interim Application* (the "Final Fee Application"), ECF No. 136.

[17] *Chapter 7 Trustee's Motion for Turn-Over of Retainer Balance, Objection to the Second Interim Fee Application of Ruta Soulios & Stratis LLP, as Supplemented to Increase Amount of Fees, and Seeking to Convert to a Final Fee Application, and Reservation of Rights to Seek Disgorgement of Fees* (the "Motion to Compel Turnover"), ECF No. 141.

7

RSS did not pursue, or even investigate, potential avoidance or damage claims against Sam Kim and his wife, and On Five, aggregating $234,000 and $580,000, respectively. *Id.*

She also contended that because the estate is administratively insolvent, the Court should give effect to the subordination provisions of section 726(b) of the Bankruptcy Code. *Id.* at 22. In her Motion for Disgorgement,[18] the Trustee sought an order disqualifying RSS as Debtors' counsel, denying RSS additional compensation, and directing RSS to disgorge the fees paid and expenses reimbursed in the First Interim Fee Order. RSS objected to both motions, and supplemented its request for compensation.[19]

**The Fee Order**

Without limitation, in the Fee Order,[20] the Court found that the Retainer is property of the chapter 7 estate, and that RSS did not provide adequate disclosure of all connections with the Debtors, Sam Kim and On Five, as required by Rule 2014 and Rule 2016. Fee Order at 30-36. The Court denied the Trustee's request to disqualify RSS as Debtors' counsel. *Id.* at 43. Moreover, pending the Trustee's winding-up and completion of the administration of these cases, the Court deferred its consideration of: (i) the appropriate sanction for RSS's disclosure violations; (ii) whether to order disgorgement of fees already paid to RSS under the First Interim Fee Order; (iii)

---

[18] *Supplement to Chapter 7 Trustee's Motion for Turn-Over of Retainer Balance, and to Petition the Court for an Order Compelling Ruta Soulios & Stratis LLP to Disgorge Fees* (the "Motion for Disgorgement"), ECF No. 182.

[19] *Response to Objection to Application of Ruta Soulios & Stratis LLP for a Final Award of Compensation for Services Rendered and Reimbursement of Expenses as Chapter 11 Counsel for the Debtors*, ECF No. 143; *Ruta Soulios & Stratis LLP's Amended Reply to Chapter 7 Trustee's "Supplement to Chapter 7 Trustee's Motion for Turn-Over of Retainer Balance, and to Petition the Court for an Order Compelling Ruta Soulios & Stratis LLP to Disgorge Fees" and in Further Support of Application of Final Award of Compensation for Services Rendered and Reimbursement of Expenses as Chapter 11 Counsel for the Debtors*, ECF No. 186; *Supplemental Memorandum of Law of Ruta Soulios & Stratis LLP in Further Support of Final Fee Application*, ECF No. 194.

[20] *Memorandum Decision and Order Addressing Objections to Fee Application and Chapter 7 Trustee's Motion to Compel and Motion for Disgorgement* (the "Fee Order"), ECF No. 288.

whether to order turnover of the Retainer Balance; and (iv) the merits of RSS's Second Interim and Final Fee Applications. *Id.* at 44-45.

**Status of the Chapter 7 Cases**

As things stand, in addition to objecting to the Final Fee Application, the Trustee seeks two forms of relief against RSS: (i) the imposition of sanctions against RSS for its violations of the disclosure requirements under Rules 2014 and 2016, and section 329 of the Bankruptcy Code; and (ii) the turnover of the Retainer Balance as property of the estate under section 541 of the Bankruptcy Code. *See* Trustee Letter Brief at 2-4; Motion to Compel Turnover at 6. She argues the sanction may include disgorgement of fees previously paid. *Id.* at 3-4. The Trustee has completed the administration of these cases. *See* Status Report at 2;[21] Trustee Letter Brief at 2.[22] She contends, and the Court agrees, that those issues are ripe for resolution. *See* Status Report at 2. The Court considers them below.

**DISCUSSION**

**The Sanctions For RSS's Disclosure Violations**

RSS violated its disclosure obligations under the Bankruptcy Code and Rules in two ways. It failed to disclose its representation of Sam Kim, the Debtors' president, in the pre-petition Weihai Litigation, and failed to disclose that On Five, an insider, paid the Retainer out of the proceeds of the On Five Transfers. *See* Fee Order at 33 ("[A]lthough RSS's prior representation of Sam Kim does not rise to the level of an actual conflict of interest, it is plain that in failing to disclose . . . its relationship with On Five and that it represented Sam Kim in the Weihai Litigation,

---

[21] *See Trustee's Case Status* (the "Status Report"), ECF No. 302.

[22] *Letter Brief re: Open issues as set forth in Memorandum Fee Order Addressing Objections to Fee Application and Chapter 7 Trustee's Motion to Compel and Motion for Disgorgement* (the "Trustee Letter Brief"), ECF No. 307.

9

RSS did not provide adequate disclosure of all connections with the Debtors and 'parties in interest,' as required by Bankruptcy Rule 2014." (citing Fed. R. Bankr. P. 2014(a)).

The estate is administratively insolvent, as the funds on hand are sufficient to satisfy less than 20% of the chapter 7 administrative expense claims. Status Report at 2. By application of section 726(b) of the Bankruptcy Code, where a chapter 11 case is converted to a case under chapter 7 pursuant to section 1112 of the Bankruptcy Code, the administrative expense claims of pre-conversion professionals retained in the chapter 11 case pursuant to section 327 of the Bankruptcy Code that are otherwise entitled to administrative expense status pursuant to sections 330(a) and 503(b) of the Bankruptcy Code are subordinated to the chapter 7 trustee's administrative expenses. Fee Order at 19-20. Thus, administrative expense priority claims arising under section 503(b) in a chapter 7 case have priority over any such claims arising prior to the conversion of the case under section 1112 of the Bankruptcy Code. *Id.* at 20 (citations omitted). In applying the waterfall under sections 503(b) and 726(b), there are no funds available to further compensate RSS for the services it provided in the Chapter 11 Cases.

An issue raised during the Status Conference was whether the Court could direct RSS to disgorge the fees paid to RSS under the First Interim Fee Order in order to give effect to the chapter 7 priority provisions in section 726(b) of the Bankruptcy Code. In *In re Headlee Management Corp.*, ("*Headlee*"), a converted chapter 11 case, the chapter 7 trustee sought to compel debtor's chapter 11 counsel to disgorge interim fees paid to counsel "purely on the basis of administrative insolvency." *In re Headlee Management Corp.*, 519 B.R. 452 (S.D.N.Y. 2014). Chief Judge Morris denied the motion, as she found "no statutory authority to disgorge interim professional fees purely on the basis of administrative insolvency . . . ." *Id.* at 453. Specifically, she held that "there is no

10

authority in the Bankruptcy Code to compel disgorgement of interim fees under §§ 726[b] or 105(a)." *Id.* at 458.

In her letter brief, the Trustee "clarifie[s] that she is not requesting that RSS disgorge its [First] Interim Fee Award under 11 U.S.C. Section 726(b) . . . ." Trustee Letter Brief at 3. Citing *Headlee*, she asserts that "while the application of 11 U.S.C. Section 726(b) would negate a distribution to RSS on its Second Interim Fee Application, which has yet to be allowed, it does not follow that Section 726(b) mandates RSS to disgorge its First Interim Fee Award." *Id.* She explains that "[she] supports the imposition of monetary sanctions against RSS at the Court's discretion in an amount to be determined by the Court." *Id*. (footnote omitted).

RSS argues that the Trustee's withdrawal of her request for disgorgement under the section 726(b) of the Bankruptcy Code effectively moots the dispute over RSS's fee award under First Interim Fee Order. RSS Letter Brief at 3.[23] RSS contends that any attempt to recharacterize disgorgement as a sanction would circumvent the holding in *Headlee*, which determined that "there is no authority in the Bankruptcy Code to compel disgorgement of interim fees under 11 U.S.C. §§726(b) or 105(a)." *Id.* at 1-2 (quoting *Headlee,* 519 B.R. at 458). RSS further argues that any sanctions for its disclosure failures should be limited to 10% of its Second Fee Application amount because

> (a) the failure to disclose was inadvertent, (b) RSS rendered valuable services to the Debtor in good faith, services that benefited the estate and its creditors, (c) RSS is going to be uncompensated for significant work in the Chapter 11 [Cases] totaling approximately $20,000 more than the retainer balance, and (d) RSS has incurred significant legal fees in litigating the Trustee's turnover and disgorgement motions. As such a reduction in the compensation due RSS in its Second Interim Fee application along the guidelines set by the courts in *In re EBW Laser Inc.*, [333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) ("*EBW Laser*")]

---

[23] *Letter Brief concerning Ch. 11 interim fee* ("RSS Letter Brief"), ECF No. 310.

11

and *Al Gelato Continental Desserts, Inc.* [99 B.R. 404, 409 (Bankr.N.D.Ill.1989) ("*Al Gelato*")] would be reasonable.

*Id.* at 5 (footnote omitted). RSS also maintains that the Court should require the Trustee to disclose specific information about the administrative insolvency of the estate before imposing any sanctions, asserting that the Trustee's unsuccessful litigation efforts against Capstone Capital Group and On Five resulted in an administratively insolvent estate "in the hundreds of thousands of dollars" with no benefit to creditors. *Id.* at 5-6.[24]

In the Second Trustee Status Report,[25] the Trustee purports to "clarify" the Trustee Letter Brief "to delete any request that sanctions be paid to the estate and affirmatively state that any sanctions imposed by the Court as a result of RSS's disclosure violations should be paid into the Bankruptcy Court." Second Status Report at 2. She maintains that the Court has "inherent authority to issue sanctions for violation of its orders[,]" *id*. (citation omitted), and "requests that any sanctions imposed against RSS for violation of its disclosure obligations be paid into the Bankruptcy Court," *id*. The Trustee asserts that both the Trustee Letter Brief and RSS Letter Brief properly cite *Headlee*, 519 B.R. at 453, which held that section 726 provides "no statutory authority to disgorge" chapter 11 interim fees in a converted case "purely on the basis of

---

[24] There is no merit to that argument.

> Under § 704 of the Bankruptcy Code, the chapter 7 trustee is directed to marshal, account for and liquidate the property of the estate, and close the estate as expeditiously as possible consistent with the best interests of the parties in interest. In addition, he must investigate the financial affairs of the debtor, examine proofs of claim, and where appropriate, object to their allowance, furnish information about the estate to parties in interest upon request, and render a final report and account.

*Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship),* 277 B.R. 181, 209-210 (Bankr. S.D.N.Y. 2002). "This section does not require the trustee to disclose to any party all information requested by that party without limitation. The language of the section makes clear that the court may place reasonable restrictions on such request." 6 Collier on Bankruptcy P 704.10 (16th ed. 2024) (citing *Speleos v. McCarthy*, 201 B.R. 325 (D.D.C. 1996)). To require the Trustee to submit such a report would further deplete the already insolvent estate and would run afoul of section 704's requirement of closing the estate as expeditiously as possible.

[25] *Status Report* (the "Second Status Report"), ECF No. 311.

administrative insolvency." *Id*. The Trustee further notes that RSS's failure to properly disclose information in the Debtors' Statement of Financial Affairs has resulted in significant expenditures of time and resources by the Trustee's professionals in conducting discovery, for which they will receive less than 20% compensation. *Id.* at 3. She says that her bankruptcy counsel spent approximately forty hours of legal services specifically addressing RSS's disclosure violations and refusal to refund the Retainer Balance. *Id.* at 3-4.

Rule 2014 requires that a professional seeking employment in a bankruptcy case submit a "verified statement . . . setting forth that person's connections" to the debtor, creditors and any other party in interest. Fed. R. Bankr. P. 2014(a)(3); *see also In re Tribeca Market, LLC*, 516 B.R. 254, 278 (S.D.N.Y. 2014) ("Rule 2014(a) requires a professional seeking an order for employment in a bankruptcy case to submit a verified statement setting forth the professional's connections to the debtor, creditors, or any other party in interest, including their counsel and accountants." (quotation marks omitted)). "The purpose of Rule 2014 is to provide the Court (and the United States Trustee) with information to determine whether the professional's retention is in the best interests of the estate and to maintain the integrity of the bankruptcy system." *In re WorldCom, Inc.,* 311 B.R. 151, 164 (Bankr.S.D.N.Y.2004) (internal citation omitted). Accordingly, to further that purpose, courts strictly construe Rule 2014. *In re Tribeca Market, LLC*., 516 B.R. at 278 (citing *In re Leslie Fay Cos.,* 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994)).

Rule 2016 and section 329 of the Bankruptcy Code work hand in glove. Section 329(a) requires attorneys who are "representing a debtor in a case under [title 11], or in connection with such a case," to file a statement disclosing his or her fees. 11 U.S.C. § 329(a). In turn, Rule 2016(b) implements section 329(a). It requires "every debtor's attorney . . . [to] file and send to the United States trustee the statement required by § 329." Fed. R. Bankr. P. 2016(b)." Section 329(a) and

13

Rule 2016(b) require the source of compensation to be disclosed, even if the source is a third party. *See generally* Fee Order at 12-17.

"So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees or even disqualification." *In re Leslie Fay Cos.*, 175 B.R. at 533. "Courts have imposed a variety of sanctions based on a failure to make the required disclosures. The sanctions range from a denial of all fees, to a reduction of fees, to the imposition of economic sanctions." *In re Balco Equities Ltd., Inc.*, 345 B.R 87, 112 (Bankr. S.D.N.Y. 2006) (quoting *In re Fretter, Inc.,* 219 B.R. 769, 776-777 (Bankr. N.D. Ohio 1998)). In that light, the Court considers and rejects the positions advocated by RSS and the Trustee.

RSS contends that any sanctions for its violations of the disclosure rules should be limited to 10% of the fees sought in its Second Interim Fee Application. RSS Letter Brief at 5. RSS misplaces its reliance on *EBW Laser,* 333 B.R. 351, and *Al Gelato,* 99 B.R. 404. In *EBW Laser*, the court imposed a 10% fee reduction as a sanction where counsel failed to disclose a "side agreement" with debtor's president in its retention application. 333 B.R. at 359. The court found that in omitting that information, the application was "misleadingly incomplete" and "inaccurate," but that there was no evidence suggesting that counsel had deliberately concealed the agreement. 333 B.R. at 359-60. In *Al Gelato*, the law firm failed to disclose its simultaneous representation of the debtor, the holding company that owned the debtor, and an individual who held claims against the debtor. 99 B.R. at 406. The court found "considerable precedent establishes that nondisclosure of potential conflicts alone justifies the court's exercise of jurisdiction to deny all fees," but declined to impose such a harsh penalty because "there appear[ed] to have been no attempt to hide the facts . . . ." *Id.* The court reduced fees by 10% as a sanction for the disclosure violation. *Id.*

14

Neither case is binding authority on the Court and, in any event, both cases are distinguishable. First, the Court does not credit RSS's contention that its failure to disclose its relationship with Sam Kim in the Retention Application was an "oversight." Fee Order at 33. Moreover, RSS's failure to comply with the mandates of Rule 2014 damaged the Debtors' estate. There were no allegations of damages in either *EBW Laser*, or *Al Gelato.* Had RSS disclosed its relationship with Sam Kim and Sam Kim's relationship with Level 8 in the Retention Application, interested parties like the UST could have vetted RSS's potential conflicts of interest, including whether RSS's relationship with Sam Kim and his wife disqualified RSS from leading an investigation into the estate's potential claims against them and other insiders. That could have had a bearing on whether RSS was suitable to act as Debtors' counsel. Fee Order at 34. Neither the UST nor any other interested party had reason to question the nature of that relationship because RSS failed to disclose it. RSS conducted no preference or fraudulent transfer analysis with respect to Sam Kim, his wife, On Five, or any other insider, nor did it make any effort to identify transfers between the Debtors and third parties. *Id.* at 33-34. That work was left to the Trustee, who, after investigating the estate's potential claims, and at a cost to the estate, sued Sam Kim and his wife to recover alleged fraudulent transfers, preferential transfers and unauthorized post-petition transfers, and to recover damages for alleged fraud, conversion, breach of fiduciary duty, misrepresentation and unjust enrichment, as well as aiding and abetting the primary misconduct committed by other defendants. *Id.* at 34. The Trustee ultimately settled that litigation for $180,000. *See Tese-Milner v. Kim (In re Level 8 Apparel, LLC),* Adv. Pro. No. 19-01335, ECF No. 196 (Order Approving Stipulation of Settlement).

Likewise, had RSS disclosed that On Five, the source of the Retainer, is an insider of Level 8 and that On Five paid the Retainer out of the proceeds of the On Five Transfers, the UST and

other interested parties could have considered the impact that On Five's relationship with the Debtors and Sam Kim had on RSS's retention, as well as any potential conflicts arising out of that relationship. Fee Order at 35. This omission proved significant, and costly to the estate, because RSS did not analyze the On Five Transfers, leaving the Trustee to sue On Five to recover the On Five Transfers as fraudulent transfers. *Id.* The Trustee obtained a $410,000 judgment against On Five. Ultimately, the Trustee abandoned the judgment against On Five. *See* ECF No. 297 (Notice of Abandonment of Property). In contrast, the omissions in the retention applications in *EBW Laser* and *Al Gento* did not result in monetary or other damages to the respective debtors.

The Trustee's argument fares no better. She contends that the Court should direct RSS to pay an unspecified amount to the Clerk of the Court as the sanction for its breach of the disclosure standards under Rules 2014 and 2016. Trustee Letter Brief at 3. To be sure, the Court has inherent authority to issue sanctions for violations of its orders. However, in support of her argument, she misplaces her reliance on *Worms v. Rozhkov (In re Markus)*, 78 F.4th 554 (2d Cir. 2023). There, the Second Circuit affirmed sanctions against an attorney who willfully violated the bankruptcy court's discovery orders for fifty-five days. *Id.* at 561-62. The attorney repeatedly refused to comply with court-ordered document production despite multiple warnings, leading the bankruptcy court to impose $1,000 per day sanctions for contempt. *Id.* at 561. The Second Circuit held that bankruptcy courts possess inherent authority to impose civil contempt sanctions to coerce compliance with their orders and compensate injured parties. *Id.* at 564. The court emphasized that such sanctions require findings that the contemnor acted willfully or in bad faith and that the order violated was clear and unambiguous. *Id.* at 565-66. *Markus* is irrelevant to this case. RSS violated disclosure requirements under the Rules 2014 and 2016, not a court order. The Trustee is not seeking to hold RSS in contempt for violating a court order.

16

"Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed. R. Bankr. P. 2014(a), court-appointed counsel proceed *at their own risk*." *Rome v. Braunstein,* 19 F.3d 54, 59 (1st Cir. 1994) (emphasis in original). Courts in this circuit have long held that failure to comply with the disclosure provisions of Rule 2014 warrants denial of compensation. The Second Circuit established this principle in *Matter of Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir. 1981), stating that "it has long been the practice in this Circuit to deny compensation to counsel who fail to comply with the disclosure provisions contained in [the predecessor to Rule 2014]." Likewise, the failure to comply with the disclosure requirements under section 329(a) is sanctionable. *In re Gorski,* 519 B.R. 67, 73 (Bankr. S.D.N.Y. 2014); *see also In re Hall*, 518 B.R. 202, 207 (Bankr. N.D.N.Y. 2014) ("[T]he approach within the Second Circuit has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard. No exceptions are to be made based upon inadvertency (slipshodness) or good faith.") (internal quotation marks omitted) (quoting *In re Laferriere*, 286 B.R. 520, 526 (Bankr. D. Vt. 2002)).

In the Final Fee Application, RSS seeks:

> (i) Interim allowance of compensation for professional services rendered, and reimbursement for actual and necessary expenses incurred in connection with such services for the Second Interim Fee Period totaling $39,990.83 and comprised of fees for services rendered to the Debtors during the Second Interim Fee Period in the amount of $34,272.00 (consisting of fees of $29,102.00 incurred during the Second Interim Fee Period, and fees of $5,170.00 incurred during the Supplemental Fee Period), out of pocket expenses incurred in connection with those services in the amount of $27.83, and payment of the Holdback, in the amount of $5,691.00.
>
> (ii) Final allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred from November 4, 2016, through August 22, 2018 (the "Fee Period") totaling $94,897.48 and comprised of fees for services rendered to the Debtors during the Fee Period in

17

the amount of $91,175.00 and expenses incurred in connection with the rendition of such services in the amount of $3,722.

Interim fee awards remain "subject to re-examination and readjustment," as section 330(a)(5) of the Code specifically permits a court to order disgorgement of interim payments awarded pursuant to section 331, to the extent they exceed the ultimate amount of fees and expenses approved by the Court under section 330. *In re GSC Grp., Inc.*, 502 B.R. 673, 742-43 (Bankr. S.D.N.Y. 2013).

In considering the merits of the Final Fee Application, and in the exercise of its discretion, and as a direct result of RSS violations of the disclosure requirements under Rules 2014 and 2016 and section 329(a) of the Bankruptcy Code, the Court denies the costs and fees requested by RSS for services rendered during the Second Interim Fee Period and the Supplemental Fee Period. The Court also denies payment of the Holdback on account of services rendered during the First Interim Fee Period. *See, e.g., In re Mattco Electronics Group, Inc.,* 383 B.R. 848, 856 (Bankr. N.D.N.Y. 2008) (reducing final fee award by half of holdback and denying additional fees where counsel's vague disclosure of attorney's relationship to committee member violated Rule 2014 disclosure requirements); *In re CF Holding Corp.*, 164 B.R. 799, 807 (Bankr. D. Conn. 1994) (denying all unpaid compensation where financial advisor failed to timely disclose managing partner's investment in potential acquirer, violating disinterestedness requirements). As its final allowance of compensation in these cases, the Court awards RSS fees and expenses totaling $51,212, and $3,694.65, respectively. The Court confirms RSS's right to apply the Retainer in satisfaction of those fees and expenses.

**Turnover of the Retainer Balance**

The Trustee seeks turnover of the Retainer Balance of $15,093.35 as property of the estate under section 541 of the Bankruptcy Code. In *In re MF Global Inc.*, 531 B.R. 424 (Bankr. S.D.N.Y.

2015), this Court outlined the requirements for turnover under section 542. A trustee must establish that: (i) the property at issue constitutes property of the estate under section 541(a); and (ii) the obligation to turn over the property is "matured" within the meaning of section 542(b). *Id.* at 437-38. Property of the estate is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* at 437. An obligation is "matured" when it is "presently payable" and "specific in its terms as to amount due and date payable." *Id.*

Both elements of turnover under section 542 are satisfied in this case. The Retainer is property of the estate under section 541 of the Bankruptcy Code. Ownership of the Retainer does not pass to RSS until fees and expenses are approved by the Court, as it is a credit to the payment of future fees. Fee Order at 43. RSS's obligation to return the Retainer Balance is matured, as the Court has fixed RSS's final compensation in these cases, and RSS has received full payment of the awarded fees and expenses. There are no fees or expenses due and owing to RSS in this case.

The Court directs RSS to promptly remit the Retainer Balance to Trustee's counsel.

## CONCLUSION

The Court grants the Trustee relief to the extent set forth in this Memorandum Decision and Order. The Trustee is directed to settle an order consistent with the Memorandum Decision on five business days' notice to RSS and the UST.

IT IS SO ORDERED.

Dated: October 10, 2025
      New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

19